ROBERT J. VAN VALKENBURG, APPELLANT, V.
LIBERTY LODGE NO. 300 A.F. & A.M. ET AL., APPELLEES.
619 N.W. 2d 604

Filed December 5, 2000. No. A-99-1294.

I

Lori L. Phillips and David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

William T. Wright and Maithri C. Baxter, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellees.

HANNON, SIEVERS, and MOORE, Judges.

SIEVERS, Judge.

Robert J. Van Valkenburg (Robert) sues for reinstatement in his fraternal association, Liberty Lodge No. 300 A.F. & A.M. (Liberty Lodge). Liberty Lodge and the other defendants demurred to Robert's second amended petition. Finding that the petition failed to state a claim for breach of contract, the district court sustained the demurrers and dismissed the petition.

## BACKGROUND

The significant allegations in the second amended petition are as follows: Robert became a member of Liberty Lodge in 1990. Liberty Lodge is a subordinate lodge of the Grand Lodge A.F. & A.M. (Grand Lodge), which is a fraternal association of Masons incorporated in Nebraska. As a subordinate lodge, Liberty Lodge is subject to the constitution and bylaws of the Grand Lodge. For a more detailed description of this fraternal association, see *Ancient and Accepted Scottish Rite v. Board of County Commissioners*, 122 Neb. 586, 241 N.W. 93 (1932).

In January 1997, Robert, a member at the time, received notice that several members of the Liberty Lodge had filed Masonic charges against him. The charges alleged that Robert violated various lodge rules by intimidating and threatening lodge members, by misrepresenting the work of freemasonry, and by interfering with lodge finances. After finding Robert guilty of six of the eight Masonic charges, the trial commission of the Grand Lodge expelled Robert from the fraternal association.

Robert appealed the commission's findings to a grievance committee of the Grand Lodge. After a recommendation from

the grievance committee, the Grand Lodge affirmed the trial commission's expulsion of Robert. Robert alleges that he has exhausted all remedies afforded him by Masonic lodge rules as of the date of his expulsion.

Robert's suit names Grand Lodge, Liberty Lodge, and various members from both lodges as defendants. In the operative petition, Robert alleged that the defendants breached his contract with the Grand Lodge as contained in the Masonic constitution and bylaws by failing to follow Masonic procedural rules and by denying him a fair hearing on the Masonic charges. Robert amended his petition two times. The defendants demurred to the last petition. The district court sustained the defendants' demurrer, reasoning that Robert had not alleged, and could not allege, that the defendants' breach of contract denied him any civil or property right.

### ASSIGNMENT OF ERROR

Robert asserts that the district court erred in finding that he failed to set forth a cause of action against the defendants.

### STANDARD OF REVIEW

■ Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000).

### ANALYSIS

*Scope of Judicial Involvement in Voluntary Associations.*

Robert argues that the district court erred in dismissing his cause of action for failure to state a claim because the law does not require him to claim an invasion of a property interest to maintain a cause of action for breach of contract, and in any event, he alleged a property interest in his Masonic membership.

■ In order to recover for breach of contract, a plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). This is not a typical breach of con-

tract action, because the alleged contract was between a voluntary beneficial association and one of its members. In such situations, the Nebraska Supreme Court has substantively limited which claims are justiciable.

A decision of the governing body of a voluntary association is binding and is generally not subject to collateral attack in the courts. *Straub v. American Bowling Congress*, 218 Neb. 241, 353 N.W.2d 11 (1984). Generally, courts will not interfere with the internal affairs of an association to settle disputes between members or with regard to discipline or internal government, provided that the government of the association is administered fairly and in conformity with its laws and other applicable law and no property or civil rights have been violated. *Id.* See, also, *Folts v. Globe Life Ins. Co.*, 117 Neb. 723, 223 N.W. 797 (1929) (fraternal societies are generally left free to determine their own course on matters relating to qualifications, discipline, control, and conduct of their members concerning internal government); *O'Brien v. South Omaha Live Stock Exchange*, 101 Neb. 729, 164 N.W. 724 (1917) (courts will not interfere with good faith disciplinary proceedings in voluntary association if conducted according to rules and bylaws of association, and such proceedings are not obnoxious to public policy or law of land).

The rationale for limited judicial review is that members of such associations voluntarily agree to submit to its rules and are bound by their enforcement. *O'Brien, supra.* Furthermore, "[g]iven the difficulty that courts would encounter in attempting to interpret Masonic law . . . judicial intrusion should be confined to procedures that are fundamentally unfair." *Rutledge v. Gulian*, 93 N.J. 113, 124, 459 A.2d 680, 686 (1983).

*The Requisite Allegations/Is a Property Right Affected?*

The petition does not seek damages. Robert's object in filing suit was to regain membership in the Grand Lodge, an equitable remedy. See *Collection Bureau of Grand Island v. Fry*, 9 Neb. App. 277, 610 N.W.2d 442 (2000) (whether nature of action is legal or equitable is to be determined from its main object, as disclosed by averments of pleadings and relief sought). In Robert's petition, he

pray[ed] for judgement against the Defendants determining that [Robert's] expulsion was null and void, and that any expulsion of [Robert] from membership in the Grand Lodge was ineffective as a matter of law, and that [Robert's] membership be deemed continuing without interruption, from and after the date of the expulsion . . . .

While Robert clearly seeks equitable relief, a court of equity will not inquire into the regularity or validity of disciplinary proceedings by a voluntary unincorporated association, not organized for profit, against one of its members *when no civil or property right of such member will be affected. Rogers v. Tangier Temple,* 112 Neb. 166, 198 N.W. 873 (1924) (court observed that members in such associations have no severable interest or property right in associations' common funds). Accord *Weyrens v. Scotts Bluff County Medical Society,* 133 Neb. 814, 277 N.W. 378 (1938). See *Deloisted v. Hilson,* 120 Neb. 788, 235 N.W. 340 (1931) (rule applied in case of expulsion from church membership). The right of membership and rights incident thereto in a voluntary unincorporated association do not flow from the common law, but from the organization's agreement, and the power of the association over its membership is absolute, *except where a civil or property right of the member is invaded. Rogers, supra. Rogers* defined a "civil right" as a right "which is guaranteed by Constitution, statute or the law of the land." 112 Neb. at 171, 198 N.W. at 874. But, Robert does not allege the involvement of a civil right.

We return to the case we prominently cited earlier in this opinion, *Straub v. American Bowling Congress,* 218 Neb. 241, 353 N.W.2d 11 (1984). In *Straub,* a bowler sued the American Bowling Congress (ABC) for failing to recognize his scores on an occasion when he bowled a "perfect" 300 game. Upon becoming a member of the ABC, Straub agreed to be bound by the ABC rules and granted jurisdiction over all bowling disputes to the ABC. Straub alleged that ABC breached its contract with him and was fraudulent and negligent in failing to recognize his high score. In discussing his contract claim, the court held: "While courts generally do not interfere with the internal affairs of a voluntary association, an action may be maintained for breach of contract if it can be shown that defendants violated the

.contractual terms of membership." *Id.* at 244, 353 N.W.2d at 13. However, in discussing his fraud and negligence claims, the court said:

Generally, courts will not interfere with the internal affairs of an association . . . to settle disputes between members or with regard to discipline or internal government, provided that the government of the society is administered fairly and in conformity with its laws and other applicable law *and no property or civil rights have been violated.*

(Emphasis supplied.) *Id.* at 244, 353 N.W.2d at 13.

In *Communications Workers of America v. Abrahamson,* 228 Neb. 335, 422 N.W.2d 547 (1988), the court distinguished the principle in *Straub* of judicial noninterference with association discipline matters, while relying upon the recognition of justiciable contract claims against voluntary associations. *Abrahamson, supra,* involved a petition for judicial enforcement of fines imposed against union members who crossed picket lines during a strike, and the union's cause of action was allowed to proceed because the members violated the contractual terms of membership by not paying the fines.

■ From the foregoing authority, we hold that the Nebraska rule is that in an expulsion or disciplinary case involving a voluntary association, the member must allege an invasion of a civil or property right before a court will review his or her wrongful expulsion claim, and then, the scope of review is whether the association's actions were consistent with its rules, fair to the individual, prompted by proper motives, and in accordance with public policy and the law. *Straub, supra.*

Other jurisdictions nearly universally follow the rule that courts will not review matters of internal discipline and the administration of benevolent associations unless the aggrieved member's civil or property rights are violated. See, *Grand Lodge K. of P. v. Taylor,* 79 Fla. 441, 84 So. 609 (1920); *Taite v. Bradley,* 151 So. 2d 474 (Fla. App. 1963); *Crutcher v. Order of Railway Conductors,* 151 Mo. App. 622, 132 S.W. 307 (1910); *Lone Star Lodge, K. & L. of H. v. Cole,* 62 Tex. Civ. App. 500, 131 S.W. 1180 (1910); *National Grange v. O'Sullivan Grange,* 35 Wash. App. 444, 667 P.2d 1105 (1983). Compare *Rutledge v.*

*Gulian,* 93 N.J. 113, 459 A.2d 680 (1983) (recognizing Mason's valuable personal relationship to Masonic association, rather than his property interests, as true basis for judicial relief against wrongful expulsion).

Robert does not allege that his expulsion violates public policy or fundamental fairness. See *Rutledge, supra* (mere status as member in Masonic lodge warrants judicial review when expulsion violates public policy or fundamental fairness). Nor does he claim a constitutional or statutory right to reinstatement. "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." *Rogers v. Tangier Temple,* 112 Neb. 166, 198 N.W. 873 (1924), quoting *In re Sawyer,* 124 U.S. 200, 8 S. Ct. 482, 31 L. Ed. 402 (1888). Compare *Smooth Ashlar Grand Lodge v. Odom,* 136 Ga. App. 812, 222 S.E.2d 614 (1975) (because benevolent association members had statutory right to inspect association's accounting records and because such inspection would not interfere with internal management and discipline of association, court had authority to compel such inspection).

Consequently, because Robert seeks only reinstatement via judicial review of an association's internal discipline, Robert must plead facts showing an invasion of a civil or property right. Additionally, Robert must plead facts showing that the lodges either took action inconsistent with Masonic rules; took action that was prompted by fraud, malice, or collusion; treated Robert unfairly during the proceedings at issue; or adopted rules that conflict with public policy or law.

*Robert's Petition.*

Having decided what Robert must plead, we turn to what he has pled. To withstand a demurrer, Robert must plead a statement of "facts sufficient to constitute a cause of action." See Neb. Rev. Stat. § 25-806(6) (Reissue 1995). When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Hill v. Women's Med. Ctr. of Neb.,* 254 Neb. 827, 580 N.W.2d 102 (1998). Moreover, a court must assume that the

facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Armour v. L.H.*, 259 Neb. 138, 608 N.W.2d 599 (2000). Finally, in determining whether a cause of action has been stated, a petition is to be construed liberally, and if as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997).

The constitution and bylaws of a voluntary association constitute a contract between the members of that association. *Straub v. American Bowling Congress*, 218 Neb. 241, 353 N.W.2d 11 (1984); *Van Dahl v. Sovereign Camp, W. O. W.*, 130 Neb. 181, 264 N.W. 454 (1936) (contract between fraternal benefit association and member thereof consists of articles of incorporation, constitution, laws, bylaws, application for membership, and membership certificate). Robert alleged that he had been a lodge member in good standing since 1990 and incorporated by reference relevant portions of the Grand Lodge constitution and bylaws. Thus, Robert alleged a contract with the Masonic lodges.

Robert alleged that the lodges denied him procedural due process during the lodges' handling of the Masonic charges against him by serving him improper notice, failing to specify the Masonic charges with reasonable certainty, failing to comply with rules of evidence, allowing prosecution without jurisdiction, and denying him a fair trial. Each violation is alleged to be contrary to the Masonic bylaws or constitution, or unfair to Robert. As set forth in *Straub, supra,* and *Communications Workers of America v. Abrahamson*, 228 Neb. 335, 422 N.W.2d 547 (1988), an association's action inconsistent with its rules or its unfair treatment of members during association disciplinary proceedings are proper grounds for judicial review.

As for compliance with any conditions precedent that actuate the lodges' duties under the contract, Robert satisfies this element by alleging that he has exhausted all remedies available to

him under the constitution and bylaws of the Grand Lodge since being expelled.

The remaining issue is whether Robert has alleged facts that a property right was violated. Robert alleges that two property rights were violated. Robert first alleges "[t]hat as a result of Plaintiff's unlawful expulsion, Defendants have deprived the Plaintiff of his right to reside in, and any care provided in, the Nebraska Masonic Home located in Plattsmouth, Nebraska, or any of its successors." As a second property right, Robert alleges that he has a property interest in wearing his heirloom jewelry with the Masonic emblem because it is a criminal offense, pursuant to Neb. Rev. Stat. § 21-622 (Reissue 1997), to wear such paraphernalia unless authorized by Masonic rules.

When we consider the factual allegations about the Masonic retirement home as true, as we must, and view the petition liberally as we are required to do, then Robert has clearly alleged sufficient facts to show a violation of a property right. Robert's petition alleged that he had a right to live in the Masonic retirement home and be cared for there. Therefore, although the district court correctly required an allegation of a civil or property right, it erred in sustaining the defendants' demurrer. Whether Robert can prove at trial that he actually has a right to live in the Masonic retirement home, as opposed, for example, to a right to have an application to live there considered, is not the issue at the pleading stage of this litigation. The issue is simply whether he has stated a cause of action, and we find that he has.

Because we find that Robert has sufficiently alleged a property interest in his alleged right to live in the Masonic retirement home, we need not determine whether the ability to lawfully wear Masonic jewelry is a property interest. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court need not address issue not necessary to decision). Accordingly, as to Robert's cause of action against Liberty Lodge and Grand Lodge, we reverse the district court's sustaining of the demurrer and dismissal of the petition, and remand the cause for further proceedings.

Robert named as defendants individual members from Liberty Lodge and Grand Lodge who, acting in their capacity as Masonic members or officials, participated in Robert's expul-

sion proceedings. Robert's alleged contract is not between him and the individual defendants, even though they serve as officers or on committees, but between him and the lodges. See 36 Am. Jur. 2d *Fraternal Orders and Benefit Societies* § 78 (1968). There being no allegations of a contract between Robert and the individual defendants, and no reasonable possibility of alleging such, we find that the district court properly sustained the demurrer made by the individual defendants and properly dismissed the action as to them.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.