The issue in this appeal is whether the appellant Frances Finley presented a scintilla of evidence in support of her position that Beverly Enterprises (hereinafter "Beverly") intentionally interfered with her business and that, as a result, she suffered damage.
Ms. Finley was employed as a nurse's aide by Beverly for its Riverchase nursing home facility for approximately one year. Before Beverly purchased the facility, Ms. Finley worked for Beverly's predecessor in interest, Estes Nursing Home, for one year. She was dismissed from her position with Beverly on September 3, 1982, for arguing with a patient. She continued to work at Riverchase as a private duty sitter for Thelma Stewart, a resident who required full-time care. Ms. Finley worked for Ms. Stewart by agreement with Ms. Stewart's daughter, Grace Barnes, until the first part of October 1982, when Beverly told her that, because of its policy that discharged employees may not become private duty nurses at its facility, she could no longer work as sitter for Ms. Stewart while she lived at Riverchase.
Ms. Finley brought this suit against Beverly, alleging that it had intentionally interfered with her business and that, consequently, she had lost her employment with Ms. Stewart. At the close of plaintiff's evidence, defendant Beverly moved for a directed verdict. The trial judge heard evidence on the motion outside the presence of the jury and found that Ms.Finley failed to produce a scintilla of evidence on the issueof damages. He granted the motion, and this appeal followed.
"As we read the cases, they have consistently held that, prima facie, a cause of action for intentional interference with another's business is established by showing: (1) an intentional act of interference, and (2) some consequential harm to the plaintiff's business." Marion v. Hall,429 So.2d 937, 943 (Ala. 1983), quoting Thompson v. AllstateInsurance Co., 476 F.2d 746, 748 (5th Cir. 1973). To defeat a motion for directed *Page 1367 
verdict, the plaintiff has to produce a scintilla of evidence on both (1) and (2).
The trial court held that Ms. Finley made an insufficient showing on the issue of damages. While we do not necessarily disagree, we do believe at least a scintilla of evidence was presented as to the damages allegedly suffered. Plaintiff's claims, and the evidence presented, show that, if there was a wrongful interference, it was with her right to be employed as a private duty nurse.
Under this theory, to be actionable, the interference with the employer-employee relationship must be an affirmative, intentional, knowing, malicious, unjustified, or unlawful interference with a contractual right. James S. Kemper Co. v. Cox Associates, 434 So.2d 1380 (Ala. 1983), citing also Brown v. Chem Haulers, Inc., 402 So.2d 887
(Ala. 1981), and Alcazar Amusement Co. v. Mudd ColleyAmusement Co., 204 Ala. 509, 86 So. 209 (1920).
There was no testimony that any action on the part of Beverly was taken intentionally or maliciously for the purpose of disturbing Finley's employment relationship. Rather, both the testimony of Ms. Finley and Ms. Barnes was that Janet Kendall, administrator at Riverchase Health Care Center, called and advised them that following the appellant's termination, she would not be permitted to return to the nursing home as a private sitter. There is no allegation or suggestion that Beverly's purpose was directed toward anything other than a legitimate interest in protecting its nursing home patients or that she had personally and individually been singled out for treatment different from that accorded other discharged employees.
Appellant relies on Byars v. Baptist Medical Centers,Inc., 361 So.2d 350 (Ala. 1978). That reliance is misplaced. In Byars, a hospital refused to permit a nurse's registry to refer a nurse to patients at its hospital who desired a private nurse, according to the plaintiff-nurse, because she had successfully prosecuted a personal injury action against the hospital. The plaintiff in Byars
alleged that the hospital's conduct was wrongful and malicious in that the hospital's conduct against her was prompted by her recovery of a money judgment against it. On that basis, this Court found that there was a genuine issue of material fact and that summary judgment was inappropriate.
In Byars v. Baptist Medical Centers, Inc.,361 So.2d 350 (Ala. 1978), we said:
 "If the defendant without any lawful right, or by threats made not in the exercise of a lawful right, broke up the contractual relations existing between plaintiff and his employers, although such relations could have been terminated at the pleasure of his employers, with resultant damage to plaintiff, the defendant would be liable to him for the damages thus occasioned . . . ." 361 So.2d at 352.
In that case, we applied a test first enunciated inTennessee Coal, Iron Ry. Co. v. Kelly, 163 Ala. 348,50 So. 1008 (1909):
 " 'If one does an act which is legal in itself and violates no right of another, the fact that this rightful act is done from bad motives or with bad intent . . . does not give . . . a right of action. . . .' Under this test, if the defendant's act was not illegal, but wrongful and malicious as the plaintiff claims, a cause of action for wrongful interference would lie." 361 So.2d at 355, 356.
In Byars, this Court also said:
 "[I]f it is true that the defendant's conduct was based upon a negative assessment of the plaintiff's physical ability to perform her nursing duties, the defendant's conduct would not be actionable, for the hospital would have a legal right to establish, publish and apply reasonable standards of fitness, including physical fitness, for private duty nurses. If, on the other hand, the defendant's conduct was based upon the successful exercise by the plaintiff of her legal right to seek redress in the courts for injury due to the defendant's negligence, that conduct would not justify the interference with plaintiff's future employment opportunities with defendant's *Page 1368 
patients, but would violate her right as one qualified under the Nurses Registry to be referred to patients seeking her services." (Emphasis supplied.) 361 So.2d at 356.
In Byars, the plaintiff produced a scintilla of evidence that she was discharged and taken from the referral list because she had brought suit against the hospital.
In this case, Ms. Finley has not produced a scintilla of evidence to show that there was no justification for Beverly's policy that discharged employees may not reenter the premises to work as private duty nurses. In coming to this conclusion, we have reviewed the facts of this case and applied the rule announced in this Court's recent case of Gross v. LowderRealty Better Homes Gardens, 494 So.2d 590 (Ala. 1986), and Lowden Realty, Inc. v. Odom, 495 So.2d 23 (Ala. 1986). In Gross, this Court set out the elements of the rule, as follows:
 "Therefore, we announce a new rule in this state broad enough to encompass both interference with business relations and interference with contractual relations, and which also expands the cause of action for interference with contractual relations so as to incorporate the majority rule. We hold that this tort of intentional interference with business or contractual relations, to be actionable, requires:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation:
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference." (Footnotes omitted.)
We believe that Beverly was justified, as a matter of law, in establishing a policy which would not permit discharged employees to be employed as private duty sitters for patients in the facility; therefore, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.